**TOWNSEND et al. v. SEBER et al.
(No. 1125.)**

(Court of Civil Appeals of Texas. Beaumont. June 25, 1924. Rehearing Denied July 7, 1924.)

1. **Estoppel ⟺45—Rights of grantees under sales contracts held not extinguished by foreclosure of trust deed, mortgagee's purchase, and reconveyance to original vendor.**

Rights of grantees under successive sale contracts *held* not extinguished by foreclosure of deed of trust against original vendors, mortgagee's purchase at foreclosure sale, and his reconveyance to one of original vendors, as all titles acquired by either or both of vendors inured to benefit of vendees.

2. **Husband and wife ⟺267(2)—Conveyance by deserted wife held to vest all interest of her community in sales contract in grantee.**

Where vendee under contract, subject to forfeiture on delinquency of payments, deserted wife under circumstances causing her to believe he was dead, her subsequent conveyance vested in grantee all rights, title, and interest of her community in contract; reasonable inference being that she was not able to continue payments.

3. **Husband and wife ⟺267(9)—Vendor held estopped to deny validity of conveyance by vendee's wife.**

Vendor advising and consenting to conveyance by vendee's wife, with complete knowledge of vendee's desertion of her under circumstances leading her to believe he was dead, receiving delinquent and current payments from grantee, purchasing latter's contract to sell to another, and accepting current installments from latter, with full knowledge of his rights, *held* estopped to deny validity of wife's conveyance.

4. **Vendor and purchaser ⟺261(3)—Purchaser of land sale contract held estopped to question validity.**

Purchaser of land sale contract, which he assigned for valuable consideration to another, to whom he instructed vendee to make payments, *held* estopped to question validity of contract.

5. **Husband and wife ⟺267(2)—Purchaser of contract from vendee deserting wife acquired no hostile title as against subsequent vendee deraigning title from wife.**

Purchaser of contract from vendee, who had deserted his wife, thereby vesting her with authority to sell community interest in contract, acquired no hostile outstanding title as against subsequent vendee deraigning title from wife.

6. **Estoppel ⟺45—Husband and wife ⟺267(9)—Vendor held estopped to deny validity of conveyance by vendee's wife; interest acquired by purchaser of contract from vendee after conveyance of community interest by latter's wife.**

Vendor, ratifying conveyance by vendee's wife, acquiescing in grantee's contract of sale to another, who took possession, purchasing such contract and assigning it to another, became bound by its terms, and any interest acquired by his subsequent purchase of contract from original vendee inured to benefit of assignee and vendee in possession.

7. **Mortgages ⟺154(3)—Possession at time of mortgagee's loan to purchaser of contract held sufficient to put mortgagee on notice of vendor's and vendee's rights.**

Vendee's possession of lot at time of mortgagee's loan to purchaser of contract *held* sufficient to put mortgagee on notice of vendor's as well as vendee's rights, possession being notice of all facts which reasonable inquiry would have developed.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

---

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by D. A. Townsend against G. G. Seber and another, in which W. E. Mitchell intervened. From judgment for defendants, plaintiff and intervener appeal. Affirmed.

W. P. Neblett and F. W. Brooks, both of Houston, for appellants.

Lewis Fogle, of Houston, for appellees.

WALKER, J. This was a suit in trespass to try title, involving a lot in the city of Houston, Harris county, Tex., by appellant D. A. Townsend against his brother, J. W. Townsend, and G. G. Seber, appellees. The pleadings of all parties were in the usual form, except that of appellant W. E. Mitchell, who asserted a lien against the property for $500, and prayed for a foreclosure against all other parties to the suit.

On a trial to the court without a jury judgment was entered in favor of J. W. Townsend and G. G. Seber against appellant D. A. Townsend, denying his title to the land, and awarding title and possession to appellees, and against W. E. Mitchell, denying his prayer for a foreclosure against appellees, but in his favor against D. A. Townsend on a personal judgment for the amount of his debt. D. A. Townsend and W. E. Mitchell have prosecuted their appeals from that judgment.

D. A. Townsend, who was the owner in fee simple of the lot in controversy, deeded his brother, J. W. Townsend, a half interest therein, together with a half interest in certain other property, all of which was covered by a deed of trust in favor of B. R. Hardin. Afterwards Hardin foreclosed his deed of trust against all the property and bought it in for his own account. The matter was adjusted later between the Townsends and Hardin by his reconveying all the property to D. A. Townsend for the use of both the Townsends, on a consideration of $800, of which sum J. W. Townsend paid $750. Before the foreclosure sale the Townsends executed a contract of sale to W. A. Van Auken, agreeing to execute to him a warranty deed to the lot in controversy, when, by paying monthly payments, he had paid a certain part of the purchase price. Van Auken made a few payments on this contract, and then deserted his wife under circumstances which caused her to believe he was dead. She permitted the current payments under the contract to become delinquent. With the knowledge and consent of the Townsends Thomas W. Menefee purchased from Mrs. Van Auken this contract; both he and she believing that Van Auken was dead. As a part of the consideration Menefee assumed and paid all delinquent installments on the contract, and after the purchase from Mrs. Van Auken continued for some time making the current payments. The Van Auken contract provided for its forfeiture upon default in the current payments. After holding the contract for a short while, Menefee sold the lot to appellee Seber, executing to him a new contract similar to the Townsend-Van Auken contract. After the execution of this contract, Menefee put Seber in possession of the property, which he held continuously during this litigation. About a month afterwards, to wit, on the 16th of October, 1920, Menefee, on a valuable consideration, assigned his contract with Seber to D. A. Townsend, who, on the 15th of January, 1921, on a valuable consideration, assigned the same contract to his brother, J. W. Townsend. This was done in part payment of what was owing by D. A. Townsend to his brother in adjusting their mutual interests in all the property originally conveyed by D. A. Townsend to J. W. Townsend, but not in full satisfaction thereof. After assigning this contract to J. W. Townsend, D. A. Townsend went with him to Seber, told Seber of the transfer, and requested and required him to make the balance of his payments to J. W. Townsend; telling Seber that J. W. Townsend was the owner of all right, title, and interest in the contract, and that he, himself, no longer had any interest therein. Thereupon Seber proceeded to make his current payments to J. W. Townsend. After D. A. Townsend assigned this contract to his brother, he borrowed from appellant Mitchell $500, executing a deed of trust on the lot in controversy to secure Mitchell in the payment of his note. Seber continued making his payments to J. W. Townsend until he learned of this transaction. On the record, at the time D. A. Townsend executed this deed of trust, he had the title to the lot, and explained Seber's occupancy of the lot to Mitchell's agent by telling him that Seber was his tenant, and that he expected to sell the property to Seber. Neither Mitchell nor his agent made any inquiry to Seber as to his right of possession, nor spoke to him in any way about the property. Had inquiry been made of Seber, it is a reasonable inference that he would have explained to Mitchell or his agent the full extent of his rights in the property and of the nature and ownership of the contract under which he was holding it. At the time this suit was instituted Seber owed more than enough on his contract to pay the Mitchell claim in full. His defense here was more in the nature of a stakeholder, asking instructions as to whom to pay this balance, in order to secure a deed to his property. On April 12, 1921, after D. A. Townsend had assigned the Seber contract to his brother in January preceding, W. A. Van Auken assigned to D. A. Townsend all his interest in the original contract executed to him by D. A. and J. W. Townsend. After Van Auken's return to Houston, he did not go back to his wife, and so far as this record shows lived apart from her during all the time of this litigation.

The important dates in this series of transfers are as follows:

August 25, 1919, a deed of D. A. Townsend to J. W. Townsend, conveying a one-half interest in the property in controversy.

August 25, 1919, the Townsends executed a contract to W. A. Van Auken, agreeing to convey him by warranty deed the lot in controversy.

August 19, 1920, Mrs. Van Auken conveyed this contract to Thos. M. Menefee.

September 13, 1920, Thomas Menefee executed a new contract to appellee G. G. Seber, agreeing to convey him the lot in controversy by a warranty deed.

October 16, 1920, Menefee assigned his Seber contract to D. A. Townsend.

December 13, 1920, B. R. Hardin foreclosed his deed of trust.

January 10, 1921, B. R. Hardin reconveyed the property to D. A. Townsend for the use and benefit of D. A. Townsend and his brother, J. W. Townsend.

January 15, 1921, D. A. Townsend assigned the Menefee-Seber contract to his brother, J. W. Townsend.

April 12, 1921, Van Auken reassigned his Townsend contract to D. A. Townsend.

## Opinion.

[1] The foreclosure by Hardin of his deed of trust against J. W. Townsend and D. A. Townsend, the purchase of this property by Hardin at foreclosure sale, and the reconveyance by him of the property to D. A. Townsend did not extinguish the rights of the grantees in the sale contracts, as contended for by appellants. The Van Aukens held under a contract, by the terms of which the Townsends were bound to execute to them or their vendees a warranty deed. They could relieve themselves from this contract only by executing its terms, and as these grantees were entitled to a specific performance of their contracts of sale upon a compliance by them with the terms of the sale all titles acquired after the execution of their contracts by either or both of the Townsends as a matter of law inured to their benefit.

[2] The facts of this case bring it clearly within the rule authorizing the wife to sell community property to pay community debts. It is a reasonable inference that Mrs. Van Auken was not able to continue the payments under this contract, and as by its terms it was subject to forfeiture on delinquency of payments her conveyance to Menefee vested in him all the rights, title, and interest owned by her community in the contract.

[3] D. A. Townsend was estopped to deny the validity of the conveyance from Mrs. Van Auken to Menefee, because it was made by his advice and consent, and with complete knowledge on his part of all the facts attending its execution. After its execution—that being one of the purposes of its execution and one of the considerations passing to D. A. Townsend on the assignment—Menefee paid him all delinquent payments on the original contract, and for a while continued paying D. A. Townsend the current payments due under the Van Auken contract.

Again, D. A. Townsend cannot question the validity of the assignment from Mrs. Van Auken to Menefee, because he recognized Menefee's rights therein, and, when Menefee sold the lot on the new contract to Seber, purchased that contract from Menefee, and with full knowledge of Seber's rights accepted from him the current installments due on the purchase price.

[4] Again, D. A. Townsend cannot question the validity of the Menefee-Seber contract, because, owning the same, he assigned it on a valuable consideration to his brother, took his brother to Seber, told Seber of the assignment, and advised him that J. W. Townsend was the owner of the contract, and instructed him to pay all subsequent payments to J. W. Townsend. Acting on that advice, Seber in fact made his subsequent payments to J. W. Townsend.

[5] D. A. Townsend acquired no hostile outstanding title by his subsequent purchase from Van Auken of the contract executed to him by D. A. Townsend and J. W. Townsend. This is true because Van Auken, by deserting his wife, had vested her with authority to sell the community interest in the contract. All his rights therein were therefore extinguished by the assignment from his wife to Menefee.

[6] Again, if we concede that Van Auken was the owner of the contract at the time he assigned it to D. A. Townsend, and that the wife's assignment in law conveyed nothing to Menefee, yet by ratifying Mrs. Van Auken's assignment, and acquiescing in Menefee's sale to Seber, and the purchase of that contract from Menefee, and by assigning it to his brother, he became bound by its terms, and Seber was entitled to specific performance of that contract as against both the Townsends. Whatever interest then that D. A. Townsend acquired under the transfer to him from Van Auken inured to the benefit of J. W. Townsend and G. G. Seber.

The judgment of the trial court in favor of Seber and J. W. Townsend awarding them the lot in controversy as against D. A. Townsend must therefore be in all things affirmed.

[7] We further conclude that Seber's possession of the lot in controversy at the time Mitchell made the loan to D. A. Townsend was sufficient to put Mitchell on notice, not only of Seber's rights, but also of the rights of J. W. Townsend. The rule is thus stated by 20 R. C. L. 352:

"It is a general rule of law that the possession of real property is a fact putting all persons on inquiry as to the nature of the occupant's claims, as well as the claims of person under whom he occupies."

We understand the rule to be that possession is notice of all facts which a reasonable inquiry would have developed, and, having concluded, as stated in our finding supra, that a reasonable inquiry of Seber would have developed the nature of his claim and that of J. W. Townsend, his possession gave Mitchell constructive notice of their rights. Therefore Mitchell was not an innocent mortgagee. It follows that the judgment denying Mitchell's foreclosure must also be affirmed.

Affirmed.